Argued and submitted July 11, affirmed August 21, 1996

Matthew C. TEPLY,
*Plaintiff,*

*v.*

Edye BALLARD,
Personal Representative of the Estate of
Elmo C. Viar, Deceased,
*Defendant.*

Marvin L. TEPLY,
*Appellant,*

*v.*

Edye BALLARD,
Personal Representative of the Estate of
Elmo C. Viar, Deceased,
*Respondent.*

(93-3321-L-1; CA A89961)

922 P2d 1236

Matthew Sutton argued the cause for appellant. With him on the brief were Douglas J. Richmond and Kellington, Krack, Richmond & Blackhurst.

Thomas W. Brown argued the cause for respondent. With him on the brief were Wendy M. Margolis and Cosgrave, Vergeer & Kester, L.L.P.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff[1] brought this action for personal injuries sustained in an automobile accident and for loss of consortium resulting from injury to plaintiff's wife in that accident. After plaintiff and defendant settled the personal injury claim, they submitted plaintiff's loss of consortium claim to the trial court on stipulated facts. Plaintiff appeals from the court's judgment for defendant, and we affirm.

On September 28, 1991, plaintiff, his wife and his son were injured while traveling north on Interstate 5 when the car in which they were riding collided head-on with a car driven by Elmo Viar (decedent) that was traveling south in the northbound lanes of that highway. Decedent had an insurance policy with liability limits of $25,000 per person and $50,000 per accident. Plaintiff's wife settled her claim for personal injuries with decedent's insurer for $25,000. Plaintiff and his son brought an action against decedent's personal representative for their personal injuries and for plaintiff's loss of consortium resulting from the injuries to his wife. The amended complaint sought recovery only within the limits of liability of decedent's insurance policy. Before trial, plaintiff and his son settled their personal injury claims for $7,415. Plaintiff sought $17,585, the remainder of the per-accident liability limit, for his loss of consortium. Insurer denied coverage on the ground that plaintiff's "loss of consortium claim was subsumed under the bodily injury settlement" with wife. The parties stipulated that all factual issues had been settled and, by motion, requested a hearing to determine plaintiff's legal entitlement to recover for loss of consortium. The trial court entered judgment for defendant, holding that plaintiff was not entitled to payment under the insurance policy and that the policy does not violate Oregon's Financial Responsibility Law, ORS 806.010 *et seq.*

■ Plaintiff first assigns error to the trial court's ruling that insurer's payment of $25,000, the per-person policy limit, to plaintiff's wife on her bodily injury claim "exhausts

---

[1] We use the term plaintiff to refer only to Marvin Teply. Plaintiff's son, Matthew Teply, also brought a claim for personal injury. That claim was settled, and Matthew is not a party to this appeal.

the coverage resource leaving nothing" to cover his loss of consortium claim. According to plaintiff, his claim for loss of consortium is independent of his wife's bodily injury claim and is therefore subject to the policy's $50,000 per-accident liability limit. Defendant replies that the policy "only covers plaintiff's loss of consortium claim through the 'each person' limits applicable to his wife's bodily injury claim."

The insurance policy provides, in relevant part:

## "DEFINITIONS

"* * * * *

"**D**.  'Bodily injury' means bodily harm, sickness or disease, including death that results.

"* * * * *

## "PART A—LIABILITY COVERAGE

### "INSURING AGREEMENT

"**A**.  We will pay *damages for 'bodily injury'* or 'property damage' *for which any 'insured' becomes legally responsible* because of an auto accident. * * *.

### "LIMIT OF LIABILITY

"**A**.  The *limit of liability* shown in the Declarations *for each person* for Bodily Injury Liability is our maximum limit of liability for *all damages, including damages for* care, *loss of services* or death, *arising out of 'bodily injury' sustained by any one person* in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for 'bodily injury' resulting from any one auto accident. * * *" (Boldface in original; emphasis supplied.)

In plaintiff's view, the "Limit of Liability" section of the policy conflicts with the "Insuring Agreement" section, because the former expressly covers "types of damages that do not fall within the policy definition of bodily injury," while the latter "implies that the insurer will pay only for 'bodily injury.' " Both sections, he contends, "contradict the policy definition of 'bodily injury.' " Consequently, he reasons, the

policy is ambiguous with respect to its coverage for loss of services and must be construed against defendant. *See Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985) (ambiguity strictly construed against insurer). Defendant does not dispute plaintiff's assertion that the insurance policy covers damages for loss of services but responds that the policy is unambiguous with respect to the applicable liability limit. According to defendant, the sole issue is whether plaintiff's loss of consortium claim describes a loss arising out of the bodily injury sustained by plaintiff's wife so that the per person liability limit applies or whether plaintiff's claim constitutes a bodily injury to him so that the per-accident liability limit applies. We agree with defendant's characterization of the issue and its contention that the policy is unambiguous.

■■ We construe the meaning of an insurance policy as a matter of law, giving effect to the intention of the parties as expressed by the terms and provisions of the policy as a whole. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-70, 836 P2d 703 (1992). Terms that are not defined are given their plain and ordinary meaning. *Id.* at 474.

The "Insuring Agreement" section states that the insurer will pay "damages for 'bodily injury' " for which its insured is legally responsible. The "Limit of Liability" section specifies that the maximum amount that the insurer will pay for "all damages, including damages for * * * loss of services * * * arising out of 'bodily injury' sustained by any one person" is the per-person liability limit in the policy. "Bodily injury" is defined as "bodily harm, sickness or disease, including death that results." Read together, those policy provisions describe the scope of coverage for bodily injury to one person as encompassing all legal damages that arise out of that bodily injury, including loss by others of the injured person's services. The policy language also limits the insurer's liability for those damages to the per-person liability limit.

■ An insurer may, as it has done here, define the scope of its coverage for bodily injury to include other harms that result from one person's bodily injury, without defining those

other harms as bodily injury to a second person who has suffered the consequences. *Viking Insurance of Wisconsin v. Popken*, 102 Or App 660, 663, 795 P2d 1091, *rev den* 310 Or 547 (1990); *cf. Allstate Ins. v. Handegard*, 70 Or App 262, 267, 688 P2d 1387 (1984), *rev den* 298 Or 704 (1985) (where policy defines "bodily injury" to include loss of services, claim for loss of consortium by injured party's spouse is subject to higher per-accident liability limit, because two people have suffered "bodily injury"). Plaintiff's loss of consortium claim is therefore subject to the per-person liability limit of $25,000 stated in the policy. Because plaintiff's wife settled her bodily injury claim for the full $25,000, the trial court did not err in concluding that coverage under the policy had been exhausted.

■   Plaintiff also assigns error to the trial court's ruling that defendant's insurance policy does not violate Oregon's Financial Responsibility Law (FRL), ORS 806.010 *et seq*. He argues that the FRL, which requires certain minimum levels of liability coverage in all automobile insurance policies issued in Oregon, makes clear that "loss of consortium is a liability that must be covered" and that, consequently, defendant's policy must be construed to include coverage of his claim. *See* ORS 742.038 (insurance policy that violates Insurance Code shall be construed and applied as if it had been in compliance); *State Farm Fire and Casualty Co. v. Jones*, 306 Or 415, 417-18, 759 P2d 271 (1988) (policy that violates FRL must be construed to include statutorily mandated coverage). Plaintiff goes to great lengths to explain why a loss of consortium claim falls within the ambit of ORS 806.080(1)(b), which requires policy terms that provide coverage *"against loss from the liabilities imposed by law* for damages arising out of" ownership or use of a motor vehicle. (Emphasis plaintiff's.) Defendant agrees that a policy that complies with the FRL must include coverage for loss of consortium as an insured liability. However, he disputes plaintiff's contention that the FRL requires a minimum limit of coverage for plaintiff's loss of consortium claim independent of the liability limit for his wife's bodily injury claim.

Every motor vehicle insurance policy issued in Oregon must provide the statutory minimum limits of coverage. ORS 742.450; *Viking Ins. Co. v. Petersen*, 308 Or 616,

621, 784 P2d 437 (1989). Owners and operators of motor vehicles must maintain minimum standards of financial responsibility in order to "respond in damages, in amounts required under this section, for liability arising out of ownership, operation, maintenance or use of a motor vehicle." ORS 806.060. They may comply by "[o]btaining a motor vehicle liability policy meeting the requirements of ORS 806.080[.]" ORS 806.060(2)(a). ORS 806.080 provides, in relevant part:

"(1)   A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:

"* * * * *

"(b)   It must insure the named insured and all other persons insured under the terms of the policy against loss from the *liabilities imposed by law for damages arising out of* the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. * * *

"(c)   It must provide the minimum limits of coverage required under ORS 806.070." (Emphasis supplied.)

The minimum liability limits specified in that statute include:

"(a)   $25,000 because of bodily injury to or death of one person in any one accident;

"(b)   Subject to that limit for one person, $50,000 because of bodily injury to or death of two or more persons in any one accident[.]" ORS 806.070(2)(a)(b).

The precise question before us is whether ORS 806.060 to ORS 806.080 require a minimum liability limit for a loss of consortium claim that is independent of the $25,000 liability limit for bodily injury to one person specified in ORS 806.070(2)(a). The answer depends on whether loss of consortium is intended to be among the damages that result from bodily injury to plaintiff's wife or whether it is a separate bodily injury to plaintiff. That is a matter of statutory construction, which in this case begins and ends with an analysis of the text of those statutes in the context of other related statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

ORS 806.060 defines financial responsibility as the ability to "respond in damages * * * for liability on account of accidents[.]" Compliance with the financial responsibility requirements may be achieved through a liability insurance policy that meets the standards in ORS 806.080. ORS 806.060(2)(a). Such a policy must provide coverage for legal damages arising out of the use of a motor vehicle, ORS 806.080(1)(b), with minimum liability limits of $25,000 because of bodily injury to one person and $50,000 because of bodily injury to two or more persons in any one accident, ORS 806.070(2). Although those provisions do not specify whether loss of consortium is a consequential damage resulting from wife's bodily injury or is a separate bodily injury to plaintiff, the FRL also specifies that financial responsibility requirements are intended to provide payment of judgments or valid settlements that meet several conditions, including:

"(4)   It must be for one or more of the following kinds of *damage arising out of a motor vehicle accident* on public or private property;

"(a)   *Damages, including damages for* care and *loss of services, because of bodily injury to* or death of *any person*." ORS 806.040(4)(a). (Emphasis supplied.)

Read together, these provisions of the FRL make clear that loss of consortium is one of the legally cognizable damages resulting from bodily injury to one person. Loss of consortium is not, as plaintiff maintains, a separate bodily injury to him. *See also* ORS 742.504(2)(h) (minimum insurance policy provisions required for uninsured and underinsured motorist coverage defines "bodily injury" as "bodily injury, sickness or disease, including death resulting therefrom"); *White v. Safeco Insurance Co.*, 68 Or App 11, 15-16, 680 P2d 700, *rev den* 297 Or 492 (1984) (under uninsured motorist coverage provisions, wife's loss of consortium based on injuries sustained by husband, is not a bodily injury to her); *Handegard*, 70 Or App at 266 (by its ordinary meaning, loss of services is not a form of bodily injury). Therefore, under the FRL, plaintiff's loss of consortium claim is subject only to the required $25,000 per-person liability limit.

The trial court did not err in ruling that plaintiff is not entitled to payment for loss of consortium under the policy and that defendant's policy complies with the FRL.

Affirmed.