596 A.2d 636

**Lynn VALLIERE, Individually, etc.**

**v.**

**ALLSTATE INSURANCE COMPANY.**

**No. 14, Sept. Term, 1990.**

Court of Appeals of Maryland.

Oct. 8, 1991.

John E. Sutter, Baltimore, for appellant.

Kevin F. Arthur (Gertrude C. Bartel, Kramon & Graham, P.A., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

ELDRIDGE, Judge.

This is a declaratory judgment action to resolve a dispute over the interpretation of an automobile insurance policy. The specific issue is whether the plaintiffs' claims for loss of services are subject to the "per person" or the "per occurrence" limitation of the policy.

In November 1984, Thomas Valliere was killed in an automobile accident caused by the alleged negligence of Susan Mattei. Mattei was insured under an automobile liability insurance policy issued by Allstate Insurance Company. Thomas Valliere's wife, Lynn, in her capacity as the personal representative of the estate of her husband, personally, and on behalf of Nicholas Valliere, the minor child of Thomas Valliere, filed wrongful death and survival actions against Susan Mattei. In the survival action, Lynn, as personal representative of the estate, sought to recover for Thomas Valliere's conscious pain and suffering. In the wrongful death action, she sought to recover damages for

the loss of her husband's services which she and her son had suffered on account of Mattei's alleged negligence.

While the tort action was pending,[1] Lynn Valliere filed in the Circuit Court for Baltimore City this declaratory judgment action against Allstate, seeking a determination that Allstate's policy defined "loss of services" as a type of "bodily injury." Such a declaration would mean that three persons had sustained "bodily injury" under the terms of the policy and that the "per occurrence" rather than the "per person" limit on coverage would apply.

The declarations page of Susan Mattei's policy with Allstate limited Mattei's bodily injury coverage to $50,000.00 for each person and $100,000.00 for each occurrence. Allstate's policy provided as follows:

"**Allstate** will pay for all damages an insured person is legally obligated to pay—because of bodily injury or property damage meaning:

1. bodily injury, sickness, disease or death to any person, including loss of services; and

2. damage to or destruction of property, including loss of use."

Under the heading "Limits of Liability" the policy provided (emphasis in original):

"The limits shown on the declarations page are the maximum **we** [Allstate] will pay for any single **auto** accident. The limit stated for each person for bodily injury applies to all damages arising from bodily injury, sickness, disease, or death sustained by one person in any one occurrence. Subject to the limit for each person, the occurrence limit is **our** [Allstate's] total limit of liability for all

---

1. During oral argument before this Court, counsel for Allstate represented that the tort case had been settled and was no longer pending. The terms of the settlement depend, in part, upon the outcome of this appeal. Allstate has paid to the Vallieres $50,000.00 under the "per person" limit. Payment of the remaining $50,000.00 under the "per occurrence" limit will be forthcoming if this Court reverses the judgment of the trial court.

legal damages for bodily injury sustained by two or more persons in any one occurrence."

Based on the first passage, the plaintiff argued that "loss of services" had been defined in the policy as a type of "bodily injury" and that the "per occurrence" limitation of $100,000.00 applied. Allstate argued that an incorporeal injury, such as loss of services, does not constitute "bodily injury" within the meaning of the policy. Instead, the argument continued, only those who suffered physical injury in the accident, here Thomas Valliere, have sustained "bodily injury" within the meaning of the policy. According to Allstate, because only one person had sustained "bodily injury," the "per person" limit of $50,000.00 applied.

The circuit court granted summary judgment in Allstate's favor, and declared that the "per person" limit was applicable and that the amount of coverage available under the policy was $50,000.00. The plaintiff noted an appeal, and, prior to argument in the Court of Special Appeals, this Court issued a writ of certiorari to consider the policy interpretation issue. We conclude that, in light of the specific language in Allstate's policy, "loss of services" is defined as a type of "bodily injury" and, therefore, the $100,000.00 "per occurrence" limit of the Allstate policy applies.

■ It is settled that in construing insurance contracts, words are to be given their customary and normal meaning, *Pacific Indem. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985); *C & H Plumbing v. Employers Mut.*, 264 Md. 510, 511, 287 A.2d 238, 239 (1972), unless there is evidence that the parties intended to employ the language in a special sense. *Cheney v. Bell National Life*, 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989). When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls. *See Women's Hospital v. Fid. & Guar. Co.*, 177 Md. 615, 623, 11 A.2d 457, 461 (1940).

Loss of consortium or other service is not a bodily injury within the meaning of usual insurance policy language, but is a consequential damage resulting from bodily injury to another person. *Daley v. United Services Auto. Ass'n*, 312 Md. 550, 553–560, 541 A.2d 632, 633–636 (1988); *Pacific Indem. v. Interstate Fire & Cas. Co., supra*, 302 Md. at 403 n. 3, 488 A.2d at 496 n. 3; *Travelers Indem. Co. v. Cornelsen*, 272 Md. 48, 51, 321 A.2d 149, 150 (1974). We continue to agree with this interpretation of normal insurance policy language and with the great number of opinions taking this position.[2] In the insurance policy involved in the present case, however, the term "bodily injury" is specifically defined to include "loss of services." The insurer is bound by that definition.

---

**2.** For cases in other jurisdictions, *see, e.g., Weekley v. State Farm Mut. Ins. Co.*, 537 So.2d 477, 480 (Ala.1989); *Stillman v. American Family Ins.*, 162 Ariz. 594, 598, 785 P.2d 114, 118 (App.1990); *Campbell v. Farmers Insurance Co.*, 155 Ariz. 102, 107, 745 P.2d 160, 165 (App. 1987); *United Services Auto. Ass'n v. Warner*, 64 Cal.App.3d 957, 964–965, 135 Cal.Rptr. 34, 38 (4th Dist.1976); *Arguello v. State Farm Mutual Auto. Ins. Co.*, 42 Colo.App. 372, 375, 599 P.2d 266, 268–269 (1979); *Izzo v. Colonial Penn. Ins. Co.*, 203 Conn. 305, 313, 524 A.2d 641, 645 (1987); *Cross v. Country Cos.*, 188 Ill.App.3d 847, 850, 136 Ill.Dec. 471, 544 N.E.2d 1246, 1247–1248 (4th Dist.1989); *Creamer v. State Farm Mut. Auto. Ins. Co.*, 161 Ill.App.3d 223, 224, 112 Ill.Dec. 748, 750, 514 N.E.2d 214, 216 (1987); *Lepic v. Iowa Mut. Ins. Co.*, 402 N.W.2d 758, 763–764 (Iowa 1987); *Albin v. State Farm Mut. Auto. Ins. Co.*, 498 So.2d 171, 174 (La.App. 1st Cir.), *cert. denied*, 498 So.2d 1088 (La.1986); *Gillchrest v. Brown*, 532 A.2d 692, 693 (Me.1987); *State Farm Mut. Ins. Co. v. Descheemaeker*, 178 Mich.App. 729, 733–734, 444 N.W.2d 153, 155 (1989); *Old Security Cas. Ins. Co. v. Clemmer*, 455 So.2d 781, 784 (Miss.1984); *New Hampshire Ins. Co. v. Bisson*, 122 N.H. 747, 748, 449 A.2d 1226, 1227 (1982); *South Carolina Ins. Co. v. White*, 82 N.C.App. 122, 123–124, 345 S.E.2d 414, 416 (1986); *Tomlinson v. Skolnik*, 44 Ohio St.3d 11, 15–16, 540 N.E.2d 716, 719 (1989); *White v. Safeco Ins. Co. of America*, 68 Or.App. 11, 15, 680 P.2d 700, 702, *rev. denied*, 297 Or. 492, 683 P.2d 1373 (1984); *McGovern v. Williams*, 741 S.W.2d 373, 376 (Tex.1987); *Whitney v. Nationwide Mut. Ins. Co.*, 151 Vt. 510, 512, 562 A.2d 467, 468 (1989); *Grange Ins. Ass'n v. Morgavi*, 51 Wash.App. 375, 376, 753 P.2d 999, 1000, *rev. denied*, 111 Wash.2d 1009 (1988); *Richie v. American Family Mut. Ins. Co.*, 140 Wis.2d 51, 56, 409 N.W.2d 146, 148 (1987); *Arnold v. Mountain West Farm Bureau Mut. Ins. Co.*, 707 P.2d 161, 166 (Wyo.1985).

An appellate court in Oregon has interpreted the identical Allstate policy language and determined that the policy defined "bodily injury" to include "loss of services." *Allstate Ins. Co. v. Handegard,* 70 Or.App. 262, 265–266, 688 P.2d 1387, 1389 (1984), *rev. denied,* 298 Or. 704, 695 P.2d 1371 (1985). In *Handegard,* the plaintiff was permitted to recover for her loss of consortium claim under the "per occurrence" rather than the "per person" limit. The Court stated (70 Or.App. at 266, 688 P.2d at 1389):

> "When a policy of insurance defines terms in a manner which differs from the ordinary understanding of those terms, the policy definition controls.... This policy does just that when it defines loss of services as a form of bodily injury."

*Handegard* is apparently the only case where the court's holding is based on the identical Allstate policy language. Other courts, however, have construed very similar language as including "loss of services" within the definition of "bodily injury" and have upheld coverage under the "per occurrence" limitation of the respective policies. *See, e.g., Giardino v. Fierke,* 160 Ill.App.3d 648, 655, 112 Ill.Dec. 559, 613, 513 N.E.2d 1168, 1172 (2d Dist.1987), *app. denied,* 119 Ill.2d 556, 119 Ill.Dec. 384, 522 N.E.2d 1243 (1988) (bodily injury means bodily injury to any person and included sickness, disease, death or loss of services which result from it); *Worcester Ins. v. Fells Acres Day School,* 408 Mass. 393, 558 N.E.2d 958, 971 (1990) ("policy defines 'bodily injury' as 'bodily injury, sickness or disease, including care, loss of services and death resulting therefrom' ").

Moreover, several appellate opinions have discussed *Handegard* and distinguished it from the cases before them on the ground that the language of the Allstate policy in *Handegard* defined "bodily injury" to include "loss of services." *See, e.g., Campbell v. Farmers Ins. Co. of Ariz.,* 155 Ariz. 102, 107, 745 P.2d 160, 165 (App.1987); *Filip v. North River Ins. Co.,* 201 Ill.App.3d 351, 147 Ill.Dec. 17, 19, 559 N.E.2d 17, 19 (1990); *Sicoli v. State Farm Mut. Auto. Ins. Co.,* 464 N.W.2d 300, 302 (Minn.App.1990); *Bain v.*

*Gleason,* 223 Mont. 442, 447, 726 P.2d 1153, 1158 (1986); *Viking Ins. of Wisconsin v. Popken,* 102 Or.App. 660, 663, 795 P.2d 1091, 1092, *rev. denied,* 310 Or. 547, 800 P.2d 789 (1990); *McGovern v. Williams,* 741 S.W.2d 373, 376 (Tex. 1987).

Consequently, the appellate opinions in our sister states, with apparent unanimity, have viewed policy language like that in the present case as treating loss of services as a bodily injury. What we said in *Pacific Indem. v. Interstate Fire & Cas., supra,* 302 Md. at 401, 488 A.2d at 495, quoting *Fisher v. Tyler,* 284 Md. 100, 106, 394 A.2d 1199, 1203 (1978), is applicable here:

> "[T]he application of this policy provision in a factual posture similar to that presented here has been before the courts of our sister states. The decisions of these jurisdictions have special significance in this context because heretofore this Court has recognized that 'like a state which adopts, by copying, a foreign statute, ... parties who adopt an insurance policy, which apparently has had nationwide use and has been judicially construed in five or six states, adopt with it the uniform judicial construction that it has received in other states.'"

Allstate argues that the words "to any person" in the phrase "(1) bodily injury, sickness, disease or death to any person, including loss of services ...," are significant because they separate "loss of services" from the definition of "bodily injury." Allstate asserts that the phrase "including loss of services" qualifies the word "damages" in the preceding paragraph and that this, coupled with the absence of "loss of services" from the Limitations of Liability section, evidences an intent to provide coverage for consequential damages under the "per person" limit when those damages arise from a single bodily injury.[3] Allstate's position is

---

3. Allstate contends that it intended to limit the recovery of consequential damages arising out of a "bodily injury" to the "per person" limit. Other courts, which have interpreted policies in the way Allstate would have us interpret theirs, had the benefit of a clear and unam-

grammatically incorrect. To reiterate, the Allstate policy states as follows:

> "**Allstate** will pay for all damages an insured person is legally obligated to pay—because of bodily injury or property damage meaning:
>
> 1. bodily injury, sickness, disease or death to any person, including loss of services; and
>
> 2. damage to or destruction of property, including loss of use."

Clearly the colon following the word "meaning" indicates that the series which follow define the words "bodily injury" and "property damages" respectively. The effect is that "bodily injury" means "bodily injury, sickness, disease or death to any person, including loss of services." The plaintiff correctly argues that the language "including loss of services" modifies "bodily injury." The policy unambiguously defines "loss of services" as a type of "bodily injury," and the language is not reasonably susceptible to more than one meaning.

Even assuming arguendo that the policy were ambiguous, the ambiguity would be resolved against the insurance company which prepared the policy and in favor of the insured. As this Court stated in *Haynes v. Am. Cas. Co.*, 228 Md. 394, 400, 179 A.2d 900, 904 (1962):

> "We have made it clear that where an insurance company, in attempting to limit coverage, employs ambiguous language, the ambiguity will be resolved against it as the one who drafted the instrument...."

biguous articulation of this intent. *See, e.g., Campbell v. Farmers Ins. Co. of Arizona, supra,* 155 Ariz. at 103, 745 P.2d at 161 ("The limit for 'each person' is the maximum for bodily injury sustained by any person in any one accident. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit"). *See also* Annotation, *Consortium Claim of Spouse, Parent or Child of Accident Victim as Within Extended "Per Accident" Coverage Rather than "Per Person" Coverage of Automobile Liability Policy,* 46 A.L.R.4th 735, 758, § 3[c] (1989) and cases cited therein.

*St. Paul Fire & Mar. Ins. v. Pryseski,* 292 Md. 187, 199, 438 A.2d 282, 288 (1981); *Bond v. Pennsylvania Nat'l Mut.,* 289 Md. 379, 384, 424 A.2d 765, 768 (1981); *Truck Ins. Exch. v. Marks Rentals,* 288 Md. 428, 435, 418 A.2d 1187, 1191 (1980); *Aragona v. St. Paul Fire & Mar. Ins.,* 281 Md. 371, 375, 378 A.2d 1346, 1349 (1977); *C & H Plumbing v. Employers Mut., supra,* 264 Md. at 512, 287 A.2d at 240.

The insurance policy defines "loss of services" as a type of "bodily injury." In this case, three persons sustained "bodily injury" according to the definition of the Allstate insurance policy, and the "per occurrence" limitation applies.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED, AND CASE REMANDED TO THAT COURT FOR ENTRY OF A DECLARATORY JUDGMENT IN ACCORDANCE WITH THIS OPINION. APPELLEE TO PAY COSTS.