741 A.2d 1099

**Charles S. JONES et ux.**

v.

**HYATT INSURANCE AGENCY, INC., et al.**

**No. 67, Sept. Term, 1997.**

Court of Appeals of Maryland.

Dec. 8, 1999.

640

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, * RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

This is an action by tort claimants against an insurance agency based upon the agency's negligent failure to procure motor vehicle liability insurance for its client. The action arose from an underlying tort suit filed by the claimants against the agency's client, whose employee was involved in a motor vehicle accident during the period in which the client had been uninsured because of the insurance agency's negligence. After judgment was entered against the client in the tort suit, the tort claimants sued the insurance agency in contract as third-party beneficiaries of the contract to procure liability insurance and in tort for negligent failure to procure the insurance.

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

The primary issue before us is whether the statute of limitations for the claimants' cause of action in contract runs from the time when the claimants and/or the client discovered or should have discovered the agency's negligent breach of contract, or from the time when the claimants obtained a tort judgment against the agency's client. We shall hold that the limitations period for the contract action began to run from the discovery of the agency's breach of contract. In addition, we shall hold that the tort claimants had no viable direct cause of action in tort against the insurance agency because the agency owed them no duty independent of the contract.

## I.

The petitioners in this case are the tort claimants Charles S. Jones and his wife, Eleanor Jones. The respondents are the Hyatt Insurance Agency, Inc., and John Swem, an employee of Hyatt.

On July 25, 1985, a motor vehicle driven by Mr. Jones was struck by a motor vehicle driven by Robert Smith, an employee of K & D Auto, Inc. K & D, an automobile parts store located in Anne Arundel County, Maryland, leased the vehicle which Smith was driving. Mr. Jones's vehicle sustained only minor damage, but Mr. Jones claimed that he suffered various personal injuries, including progressively deteriorating neurological damage.

Twenty days before the accident, K & D had arranged with Hyatt to obtain liability insurance to meet its various business needs. The negotiations with Hyatt had been conducted over the telephone by Wayne Silfies at the request of K & D's principal officers. Silfies was a life insurance agent who did business with both Hyatt and K & D's principal officers. Silfies referred K & D to Hyatt for a fee paid by the latter. Based on Silfies' conversations with Hyatt's employee Swem, K & D believed that Hyatt had secured motor vehicle liability insurance effective in early July 1985. Soon after notifying Hyatt of Mr. Jones's claim, however, K & D discovered that motor vehicle liability insurance had not been obtained, with

the result that K & D's motor vehicle was not insured until mid-August 1985, three weeks after the accident.

In a letter dated August 12, 1985, Hyatt informed Mr. Jones that "we do not and have not ever carried insurance on commercial vehicles" for K & D and that Hyatt was therefore returning Mr. Jones's estimates of property damage. Allstate Insurance Company, with which Mr. Jones had collision and uninsured motorist coverage, notified K & D in a letter dated August 27, 1985, that because K & D had no insurance at the time of the accident, Allstate would seek reimbursement for Mr. Jones's pending property damage and personal injury claims directly from K & D. In a letter dated March 6, 1986, Allstate informed K & D that it had paid Mr. Jones for property damage and that it was still awaiting reimbursement from K & D as Hyatt "has given us a definite no in regard to your insurance coverage." At first K & D refused to pay Mr. Jones's claim for property damage, taking the position that Hyatt should pay the claim. Eventually, K & D settled the property damage claim with Allstate for approximately $650.

On February 8, 1988, Mr. and Mrs. Jones filed in the Circuit Court for Baltimore City a personal injury action against K & D and Robert Smith. Hyatt was not made a party to the action. The Joneses obtained a default judgment against Smith, and K & D stipulated to its liability for Smith's accident on the ground of respondeat superior. On June 21, 1989, after a nonjury trial on damages, a judgment in the amount of $450,000 was entered in favor of Mr. Jones. An additional award of $450,000 was entered in favor of Mr. and Mrs. Jones for loss of consortium. On the same day judgment was entered, K & D assigned to the Joneses its claim against Hyatt for failing to procure motor vehicle liability insurance in the insurance package which K & D had requested from the agency. Thereafter, Allstate paid Mr. Jones $20,000 under his uninsured motorist coverage.

On October 6, 1989, about four months after the judgment and assignment, and more than four years after the accident, K & D and the Joneses as assignees filed suit in the Circuit

Court for Anne Arundel County against Hyatt. The complaint alleged that Hyatt was liable for breach of contract and for negligence in failing to procure the insurance which K & D had requested. Allstate intervened as plaintiff, seeking to recover from Hyatt the $20,000 uninsured motorist damages which it had paid to the Joneses. Hyatt filed a third-party complaint against Silfies, alleging that Silfies negligently induced K & D to believe falsely that Hyatt had procured motor vehicle liability insurance. Hyatt moved for summary judgment on the ground that the suit was barred by the three-year statute of limitations governing civil actions set forth in Maryland Code (1974, 1998 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article.

On December 30, 1991, the circuit court granted Hyatt's motion for summary judgment against K & D and against the Joneses as K & D's assignees. The court held that K & D was aware of Hyatt's breaches of contractual and tort duties, and had first sustained harm resulting from Hyatt's negligence more than three years before K & D filed suit against Hyatt on October 6, 1989. Moreover, the court held that the Joneses, as K & D's assignees, were subject to the same limitations bar as K & D. The court, however, stated that if the Joneses pursued a "direct action" against Hyatt, instead of relying upon the assignment, their cause of action might not accrue and the statute of limitations might not begin to run until June 21, 1989, the date judgment was entered against K & D in the underlying tort suit.

Thereupon the Joneses, on January 22, 1992, amended their complaint, claiming that Hyatt was liable to them because the Joneses were third-party beneficiaries of the agreement between K & D and Hyatt to procure motor vehicle liability insurance. The Joneses also asserted that Hyatt was liable to them directly for its negligence in failing to procure the insurance policy. In addition, the Joneses added two defendants: Silfies, whom Hyatt had already sued as a third-party defendant, and Swem, the Hyatt employee who allegedly failed to procure the insurance package which K & D had requested. The defendants moved to dismiss the amended

complaint, arguing that the Joneses had no direct causes of action against them and that, even if they did, such direct causes of action were nonetheless barred by the statute of limitations. The circuit court denied the motions to dismiss in July 1992, holding that "[w]hatever rights the Joneses may have, either as third party beneficiary or otherwise, accrued only after judgment was obtained against K & D."

The parties then pursued discovery and filed numerous pre-trial motions.[1] In September 1995, the case proceeded to trial solely on the issue of the defendants' liability. The jury returned a special verdict that Hyatt and Swem had negligently broken their promise to procure automobile liability insurance. In addition, the jury found that the independent agent Silfies had not acted negligently. The circuit court entered judgment in favor of the Joneses for $1,440,500, consisting of the $900,000 judgment which the Joneses had obtained against K & D plus pre-judgment interest.[2]

---

1.  Hyatt filed several discovery requests regarding the damages which Mr. Jones allegedly suffered as a result of the accident. When these requests were not answered, Hyatt filed a motion to compel discovery. On January 26, 1994, the circuit court denied Hyatt's motion on the ground that the judgment which the Joneses had obtained against K & D in the underlying tort suit was binding in the litigation between the Joneses and Hyatt.

   Hyatt then filed a motion *in limine* seeking to exclude evidence of the judgment in the underlying tort suit. The trial judge denied this motion. The judge, however, proposed that if Hyatt and the Joneses stipulated to the amount of the judgment against K & D, the judge would not present the $900,000 amount of the judgment before the jury and thus would avoid the risk of influencing the jury's decision regarding Hyatt's possible liability to the Joneses. Attorneys for both parties agreed to this stipulation at the outset of trial, with the attorney for Hyatt stating that he was reserving his right to raise on appeal the court's decision that the judgment against K & D would be binding on Hyatt if the jury were to find Hyatt liable.

2.  Before the trial court gave the case to the jury, Hyatt requested that the court submit to the jury the issues of whether the Joneses were intended beneficiaries of Hyatt's contractual undertaking with K & D and whether Hyatt owed a duty to Mr. Jones as an unknown future tort victim of K & D. The court declined to submit these requested issues. After the jury returned the special verdicts, Hyatt objected that the stipulated judgment against it should be reduced to $300,000, in the light of undisputed evidence at trial establishing that K & D had asked

The defendants Hyatt and Swem timely noted an appeal to the Court of Special Appeals which, in an unreported opinion, reversed.[3] The intermediate appellate court assumed, without deciding, that the Joneses, as third-party beneficiaries, did at one time have a viable contractual cause of action against Hyatt but held that such cause of action was barred by the statute of limitations. The intermediate appellate court rendered no holding on the Joneses' asserted negligence cause of action, as its reading of the record suggested that the Joneses' cause of action was entirely contractual, founded upon the third-party beneficiary theory. The Joneses filed a petition for writ of certiorari in this Court, and Hyatt and Swem filed a cross-petition, both of which we granted. *Jones v. Hyatt Insurance*, 346 Md. 632, 697 A.2d 915 (1997).

Although both petitioners and respondents raised many issues in their certiorari petitions, we need decide only two of them. We shall affirm the judgment of the Court of Special Appeals and hold that the statute of limitations had run on the third-party beneficiary contract action before the Joneses filed suit against Hyatt in October 1989. In addition, although we read the record as indicating that the Joneses did assert direct tort causes of action against Hyatt and Swem based on negligence, we shall hold that the Joneses had no viable tort causes of action because the defendants owed them no duty independent of the contract.

## II.

We shall assume, *arguendo*, that the Joneses had a viable cause of action in contract as third-party beneficiaries of the agreement between Hyatt and K & D for Hyatt to procure motor vehicle liability insurance. We have recognized a simi-

---

Hyatt to procure only $300,000 worth of coverage. The court declined to reduce the judgment.

3. After intervening as a plaintiff, Allstate entered into an agreement with the other parties whereby it would recoup its $20,000 from any judgment in favor of the Joneses. Consequently, Allstate was not mentioned in the special verdict or judgment, and was not a party to the appeal.

lar third-party beneficiary cause of action in contract when a tort claimant sues the tortfeasor's liability insurer for a declaratory judgment concerning coverage or for breach of the contractual duty to indemnify. *See, e.g., Mesmer v. M.A.I.F.,* 353 Md. 241, 267, 725 A.2d 1053, 1065 (1999); *Harford Mutual v. Woodfin,* 344 Md. 399, 412–413, 687 A.2d 652, 658–659 (1997), and cases there discussed; *Washington Transit v. Queen,* 324 Md. 326, 332, 597 A.2d 423, 426 (1991) ("Once there is a verdict or judgment in the tort action, a direct action may be maintained against the liability insurer" by an injured tort claimant).[4] Nevertheless, we agree with the Court of Special Appeals that any contract action which the Joneses had against Hyatt and Swem was barred by limitations.[5]

■ It is a well-settled principle that a third-party beneficiary to a contract "takes subject to the same defenses against

---

**4.** Under the same public policy and contract law analyses underlying the third-party beneficiary cause of action against the insurer, some jurisdictions have recognized a third-party beneficiary cause of action against an agent for breach of the contract to procure liability insurance. *See, e.g., Gothberg v. Nemerovski,* 58 Ill.App.2d 372, 385–386, 208 N.E.2d 12, 20 (1965) ("Because of the peculiar significance of automobile liability insurance as well as the provisions of the policy contemplated by the parties ...," the "plaintiffs can be considered third party beneficiaries of the contract to procure insurance entered into between [the tortfeasor and the agent], that is, they had a sufficient interest in such a contract to bring suit directly for its breach. In entering into this contract to procure insurance, it is a fair and reasonable inference that [the tortfeasor was] contemplating possible injury to unidentified third parties, and the insurance coverage was for the direct benefit of third parties who might be injured through [his] negligence"); *Flattery v. Gregory,* 397 Mass. 143, 150, 151, 489 N.E.2d 1257, 1262 (1986) (state law "displays the Legislature's view that injured highway travelers are intended beneficiaries of ... automobile liability insurance"; moreover, "[t]he parties to the insurance policy, or, as in this case, to a contract to procure such a policy, intend the injured third-party ... to benefit from their contract.").

**5.** The statute of limitations generally applicable to civil actions is Code (1974, 1998 Repl.Vol.), § 5–101 of the Courts & Judicial Proceedings Article, which states:

"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

the enforcement of the contract, as such, as exist between the original promisor and promisee." *Shillman v. Hobstetter,* 249 Md. 678, 690, 241 A.2d 570, 577 (1968). *See also Assurance Corporation v. Perkins,* 169 Md. 269, 284, 181 A. 436, 443 (1935) (tort claimants who have obtained judgments against the insured "have no right superior to that of the assured. They stand in his place, and the same defenses which the insurance carrier had against the right of action on the part of the assured on the policy of insurance are available to the assurer" against the tort claimants). That such defenses include the expiration of the limitations period was established by this Court in *Spates v. Spates,* 267 Md. 72, 296 A.2d 581 (1972), which held that the defense of limitations barred suit by a son who was the third-party beneficiary of a separation and property settlement agreement between his parents.

The statute of limitations on the Joneses' contract claim began to run when the cause of action for breach of contract accrued. Under the principles set forth in our cases, the cause of action accrued when Hyatt breached its contract to procure insurance and when the breach was or should have been discovered. *See, e.g., Himelfarb v. American Express Co.,* 301 Md. 698, 703, 484 A.2d 1013, 1015 (1984), quoting *Federalsburg v. Allied Con.,* 275 Md. 151, 157, 338 A.2d 275, 280, *cert. denied,* 423 U.S. 1017, 96 S.Ct. 452, 46 L.Ed.2d 389 (1975) (" 'In contract cases, the general rule is that the period of limitations begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforceable' "); *Wlodarek v. Thrift,* 178 Md. 453, 461, 467, 13 A.2d 774, 778, 781 (1940) ("For every breach of a contract, there is a right of recovery of at least nominal damages. * * * [T]he right of action accrue[s] immediately on the breach"). Since the discovery rule is now generally applicable in civil actions, accrual of the cause of action was postponed until K & D and/or the Joneses knew or should have known of the breach. *See Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680 (1981) (holding the discovery rule "applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong").

■ The determination of when a breach of contract occurs usually depends on the nature of the promises made in the contract and the times for performing those promises. There is a significant difference between an agent's or broker's breach of an agreement to procure insurance and an insurer's breach of a liability insurance policy. In relying on this Court's past decisions in cases involving insurers' alleged breaches of liability insurance policies, the circuit court and the Joneses ignored this distinction.

■ Determining when a typical liability insurance policy has been breached depends on which promise under the policy the insurer has broken. An insurer's contractual duty to indemnify an insured is ordinarily not breached until an injured tort claimant has obtained a determination of liability and damages in an underlying tort action, and the insurer refuses to pay. The insurer's promise is to indemnify or to pay what its insured is legally obligated to pay. The time for performance is when there is a settlement or a judgment against the insured, and the breach is the insurer's refusal to pay that settlement or judgment. The statute of limitations does not begin to run until that time. *Washington Transit v. Queen, supra,* 324 Md. at 333–334, 597 A.2d 423, 426 ("The statute of limitations against the insurer would ordinarily not begin running until the insurer, after a judgment in the underlying tort case, breaches the policy by refusing to pay"). *See Vigilant v. Luppino,* 352 Md. 481, 487–488, 723 A.2d 14, 17 (1999); *Lane v. Nationwide Mut. Ins. Co.,* 321 Md. 165, 176–177, 582 A.2d 501, 506–507 (1990).

■ A liability insurer's contractual duty to defend an insured, however, is a continuing duty that runs throughout the course of the underlying tort litigation against the insured. *Vigilant v. Luppino, supra,* 352 Md. at 489, 723 A.2d at 18 (1999) ("the duty to defend, by its very nature, is a continuing one that extends throughout the tort suit by the third party against the insured"). Moreover, a breach of the duty to defend can be cured at any time prior to termination of the underlying litigation. 352 Md. at 492, 723 A.2d at 19 ("An

insured should be allowed to expect the insurer to step in and cure its breach so long as the underlying action is continuing").

In contrast, a contract to obtain insurance is ordinarily breached immediately upon the agent's or broker's failure to procure the insurance in a timely manner. The promise of the agent or broker is not to provide a defense or to pay a judgment. Instead, the promise is to obtain an insurance policy, and the breach occurs when the agent or broker does not timely obtain that policy. This breach cannot be cured after the insurance applicant commits a tort for which he or she rightfully believes that insurance coverage has been obtained. The consequence of the agent's failure to procure the insurance prior to the accidental tort is that the client will not be insured. There will be no insurer-furnished defense or indemnity.

Thus, the Joneses' reliance on our cases involving breaches of insurance policies, most notably *Washington Transit v. Queen, supra,* and *Vigilant v. Luppino, supra,* is misplaced. The essential difference between the nature of the two contracts, *i.e.,* an insurance policy and an agreement to procure such a policy, necessitates our holding that the statute of limitations on the Joneses' third-party beneficiary cause of action in contract began to run as soon as Hyatt's failure to procure insurance for K & D was discovered. The contract was clearly breached long before the Joneses obtained a judgment against K & D.

Moreover, both K & D and the Joneses discovered or should have discovered Hyatt's breach of its contract to procure insurance more than three years before the present action was filed.[6] The record shows that within a few days after the July

---

**6.** If K & D had discovered the breach at a significantly earlier time than the Joneses, this Court's holding in *Spates v. Spates,* 267 Md. 72, 296 A.2d 581 (1972), suggests that limitations would begin to run against the Joneses when K & D discovered the breach. Nevertheless, *Spates* did not involve the discovery rule, as it was decided before our general adoption of the discovery rule in *Poffenberger v. Risser,* 290 Md. 631,

25, 1985, accident, John Swem of the Hyatt Insurance Agency informed K & D that its "vehicles were not covered." The Joneses were aware that K & D was uninsured as early as August 1985. For example, in a letter dated August 12, 1985, Hyatt advised Mr. Jones that "we do not and have not ever carried insurance on commercial vehicles" for K & D and that Hyatt was therefore returning the estimates and letter which Mr. Jones had sent to Hyatt. In an August 27, 1985, letter from Allstate Insurance Company to K & D, Allstate informed K & D that the insurer had paid a property damage claim resulting from the accident, that "[s]ince there is no insurance to cover this loss we are looking to you or Mr. Smith personally to pay" Allstate, and that, as to Mr. Jones's larger claim, Mr. Jones wished to "wait a few days and see if your insurance is straightened out" before seeking uninsured motorist coverage from Allstate. Mr. Jones received a check from Allstate issued on September 19, 1985. By letter of March 6, 1986, Allstate told K & D that "Hyatt Insurance has given us a definite no in regard to your insurance coverage." Certainly by this point (more than three years before filing suit against Hyatt in October 1989), K & D and the Joneses were aware, or at least were on inquiry notice, concerning Hyatt's failure to procure motor vehicle liability insurance coverage for K & D.

The Court of Special Appeals correctly held that the Joneses' third party beneficiary contract cause of action was barred by limitations.[7]

---

431 A.2d 677 (1981). There is case law under the discovery rule holding that the cause of action does not accrue until the third-party beneficiary discovers the breach. *See Bemis v. Estate of Bemis*, 114 Nev. 1021, 967 P.2d 437 (1998). We need not and shall not resolve this question in the present case because both K & D and the Joneses discovered or should have discovered the breach more than three years before this suit was filed.

7. The Joneses argue in their brief in this Court that the issue "of what the Joneses knew or should have known" was for the jury, and that Hyatt "failed to produce ... proof" on this issue at the jury trial. (Petitioners' brief at 26). Nevertheless, the record, including the documents submitted in connection with the motion for summary judgment

## III.

As previously indicated, we agree with the Joneses that, in their amended complaint, they did assert direct tort causes of action against Hyatt and Swem. Hyatt and Swem, however, argue that Maryland law does not recognize such tort causes of action under the circumstances here and that, even if such causes of action are recognized, they were barred by limitations.

The Joneses respond by arguing that their status as third-party beneficiaries of the contract between K & D and Hyatt warrants recognition of a direct tort cause of action. In addition, according to the Joneses, they "seek a rule of law that the agent who fails to provide the insurance coverage is liable to the injured motorist under the same terms and in the same amount as the insurer would have been, had the agent met his or her duty and provided the insurance coverage requested by the client." (Petitioners' brief at 11). The Joneses further assert that Maryland law recognizes that a client has a tort cause of action against an insurance agent when the agent negligently breaches its agreement to obtain an insurance policy for the client; they contend that tort claimants should similarly be entitled to maintain a tort action against the agent. The Joneses also rely upon the foreseeability of harm to persons in their position resulting from an insurance agent's breach of the contract with the client. Finally, the Joneses contend that the statute of limitations with

---

and the motion to dismiss, is uncontradicted that K & D and the Joneses, more than three years before this action, were aware or should have been aware that Hyatt had failed to procure motor vehicle liability insurance. There were no factual disputes regarding this matter.

Furthermore, in the trial court, in response to the motion to dismiss the amended complaint on the ground of limitations, the Joneses' position, relying on *Washington Transit v. Queen*, 324 Md. 326, 597 A.2d 423 (1991), was "that the statute did not begin to run until the tort plaintiffs obtained their judgment against the tort defendants, here some 2 and one-half years before the filing of the Amended Complaint. * * * *Queen* exactly fits...." As treated by the parties in the circuit court, and by the circuit court itself, the limitations issue was "solely one of law," *Poffenberger v. Risser*, 290 Md. 631, 634, 431 A.2d 677, 679 (1981).

regard to such direct tort cause of action did not begin to run until, in the underlying tort suit against K & D, the Joneses recovered a judgment.[8]

■ In our view, Hyatt and Swem owed no tort duty directly to the Joneses under the circumstances here. Because there was no direct tort cause of action, the case presents no issue concerning the running of the statute of limitations in such a tort action.

### A.

■ In order to maintain a tort cause of action based on negligence, the plaintiff must first establish that "the defendant was under a duty to protect the plaintiff from injury." *Rosenblatt v. Exxon*, 335 Md. 58, 76, 642 A.2d 180, 188 (1994). "The existence of a legally cognizable duty owed by the defendant to the plaintiff or a class of persons of which the plaintiff is a member is essential to a cause of action for negligence." *Ibid. See, e.g., Coates v. Southern Md. Electric*, 354 Md. 499, 509, 731 A.2d 931, 936 (1999); *Matthews v. Amberwood*, 351 Md. 544, 553, 719 A.2d 119, 123 (1998); *Shields v. Wagman*, 350 Md. 666, 672, 714 A.2d 881, 883–884 (1998); *BG & E v. Flippo*, 348 Md. 680, 700, 705 A.2d 1144, 1153–1154 (1998); *Erie Ins. Co. v. Chops*, 322 Md. 79, 84, 585

---

8.  In their certiorari petition, the Joneses did not raise the issue of when the statute of limitations began to run on their cause of action *as assignees* of K & D. As the trial court correctly held, however, any negligence action, which K & D might have had, accrued when K & D first sustained harm as a result of Hyatt's alleged breach of tort duty, *i.e.*, when K & D learned that, because it had no insurance coverage, it had to pay for the property damage to its own vehicle, reimburse Allstate for the damage to Mr. Jones's car, and defend itself against the Joneses' personal injury causes of action. As assignees, the Joneses were bound to the same limitations period as their assignor, K & D. *See, e.g., James v. Goldberg*, 256 Md. 520, 527, 261 A.2d 753, 757 (1970) (an assignment "does not confer upon the assignee any greater right than the right possessed by the assignor"); *Webb v. Balto. Commercial Bank*, 181 Md. 572, 580, 31 A.2d 174, 179 (1943) (an assignee is "subject to all defenses against [the assignor's] claim, for obviously, the rights of the assignee are no greater than those of his assignor * * * the statute of limitations ... applied").

A.2d 232, 234 (1991); *Jacques v. First Nat'l Bank*, 307 Md. 527, 531–535, 515 A.2d 756, 758–760 (1986), and authorities there cited. Thus, the Joneses must show that Hyatt owed them a duty to avoid any injury they may have sustained as a result of Hyatt's failure to procure insurance for its client, K & D.

As previously mentioned we have assumed, *arguendo*, that the Joneses were third-party beneficiaries of the contract between Hyatt and K & D and that, as such, the Joneses could have maintained a breach of contract action against Hyatt if the action had been timely filed. Contrary to the Joneses' position, however, any status which they might have as third-party beneficiaries under the contact is not by itself sufficient to create a duty in tort owed by Hyatt to the Joneses. As we reiterated earlier this year, *Mesmer v. M.A.I.F.*, *supra*, 353 Md. at 253, 725 A.2d at 1058, "[a] contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *See, e.g., Erie Ins. Co. v. Chops*, *supra*, 322 Md. at 84, 585 A.2d at 234 ("a 'tort duty' does not necessarily coexist . . . with a duty imposed by contract, or even with a duty imposed by statute"); *Jacques v. First Nat'l Bank*, *supra*, 307 Md. at 534, 515 A.2d at 759 ("Nor does a duty assumed or implied in contract by that fact alone become a tort duty"); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–329, 424 A.2d 744, 754 (1981) ("the duty giving rise to the tort cause of action must be independent of the contractual obligation. * * * Mere failure to perform a contractual duty, without more, is not an actionable tort").

This principle is applicable even when the failure to perform the contract results from the defendant's negligence. *Mesmer v. M.A.I.F.*, *supra*, 353 Md. at 253, 725 A.2d at 1059, and cases there cited; *Heckrotte v. Riddle*, 224 Md. 591, 595–596, 168 A.2d 879, 882 (1961) ("The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort. * * * For it is only when a

breach of contract is also a violation of a duty imposed by law that the injured party has a choice of remedies").

Consequently, the assumed status of the Joneses as third-party beneficiaries of the contract between Hyatt and K & D does not, standing alone, warrant judicial recognition of a tort duty owed by Hyatt to the Joneses.

### B.

The Joneses rely upon several cases in this Court recognizing that tort claimants, injured by the negligence of an insured tort defendant, may under some circumstances bring actions against the tort defendant's liability insurer when the latter has denied coverage. *See, e.g., Washington Transit v. Queen, supra,* 324 Md. at 331–334, 597 A.2d at 426; *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 259–264, 572 A.2d 154 (1990). *See also, e.g., Mesmer v. M.A.I.F., supra,* 353 Md. at 266–267, 725 A.2d at 1065–1066; *Harford Mutual v. Woodfin, supra,* 344 Md. at 412–413, 687 A.2d at 658–659; *Valliere v. Allstate Ins. Co.,* 324 Md. 139, 596 A.2d 636 (1991). The Joneses argue that an insurance agent who fails to procure a policy should be liable to injured claimants to the same extent as the insurance company which mistakenly denies coverage.

As discussed in Part II of this opinion, however, there are major differences between the obligation to obtain a policy undertaken by an insurance agent or broker and the typical obligations undertaken by a liability insurance company. Nonetheless, even if we were to assume, for purposes of this case, that an insurance agency which negligently breaches its contract to procure a liability insurance policy should owe the same duty to claimants like the Joneses as is owed by a liability insurer which negligently denies coverage, there would be no duty in tort owed to the Joneses.

Under Maryland law, an insurer which mistakenly denies coverage does not breach a tort duty owed either to the insured or to third-party claimants such as the Joneses. Instead, the duty owed to both the insured and to a third-party claimant is entirely contractual. The actions which the

insured or the third party claimant are entitled to bring against the insurer denying coverage are *ex contractu* declaratory judgment actions to determine coverage under the policy or breach of contract actions. *See Mesmer v. M.A.I.F., supra,* 353 Md. at 257, 725 A.2d at 1061, where we recently held that "a liability insurer's breach of the insurance contract by erroneously disclaiming coverage ... gives rise only to a breach of contract action. ..." We continued in the *Mesmer* case, 353 Md. at 258, 725 A.2d at 1061:

> "[A] liability insurer breaches no tort duty when, upon learning of a claim, it erroneously denies coverage and refuses to undertake any defense against the claim. Our cases have not recognized any independent tort duty in this situation. Instead, the only action against the insurer is for breach of contract."

*See also, e.g., Vigilant v. Luppino, supra,* 352 Md. at 488–494, 723 A.2d at 17–20, and cases there cited; *Bailer v. Erie Insurance,* 344 Md. 515, 520, 687 A.2d 1375, 1377 (1997); *Belcher v. Gov't Employees Ins. Co.,* 282 Md. 718, 724, 387 A.2d 770, 774 (1978).

Accordingly, if we were to agree with the Joneses that Hyatt's duty owed to third-party claimants should be the same as the duty owed by a liability insurer which denies coverage, a breach of that duty would not, under Maryland law, give rise to liability in tort.[9]

---

**9.** The Joneses rely upon a New Jersey case which does hold that an insurance agency, which negligently breaches its promise to procure a motor vehicle liability insurance policy, may be liable in tort to an injured third-party claimant. *Eschle v. Eastern Freight Ways, Inc.,* 128 N.J.Super. 299, 319 A.2d 786 (1974). *See also Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.,* 135 N.J. 182, 638 A.2d 1288 (1994) (involving a different factual situation, but the New Jersey Supreme Court cited with approval the *Eschle* case). The court in *Eschle,* however, seemed to hold that, under New Jersey law, the insurer which negligently denies coverage may be liable in tort to the injured third-party claimant, and it further held that the "agent stands in the shoes of the company which would have issued the policy ... had [the agent] not been negligent...." 128 N.J.Super. at 306, 319 A.2d at 790. As explained above, however, under Maryland law, an insurer which negligently disclaims coverage has not breached a tort duty owed to the

## C.

The Joneses assert that Maryland law recognizes a "cause of action by the insured against the agent/broker sound[ing] in negligence" and that an " 'agent or broker is liable to his principal if by his fault or neglect he fails to procure or renew insurance as he had contracted to do. . . . Such liability exists . . . as a tort in negligently failing to perform a duty imposed by contract.' " (Petitioners' brief at 18–19). The Joneses contend that the tort duty owed by an insurance agent to the agent's principal should extend to third-party beneficiaries such as the Joneses.

We have held that " 'an insurance agent must exercise reasonable care and skill in performing his duties' " and that the agent may become liable in tort to the principal who suffers " 'a loss by [the agent's] failure to use standard care.' " *Popham v. State Farm,* 333 Md. 136, 153, 634 A.2d 28, 36 (1993), quoting *Bogley v. Middleton Tavern,* 288 Md. 645, 650, 421 A.2d 571, 573 (1980). *See also Canatella v. Davis,* 264 Md. 190, 206, 286 A.2d 122, 130 (1972); *Lowitt v. Pearsall Chemical,* 242 Md. 245, 253, 219 A.2d 67, 72 (1966).

The cases in this Court holding insurance agents liable in tort to their principals involved negligent acts other than a mere breach of a contract to procure an insurance policy. Nevertheless, we shall assume that, on the facts of the present case, Hyatt and Swem would have been liable to K & D in tort if K & D had timely brought a tort action against them. Under our cases, however, the tort duty owed by an agent to the principal would not extend to third parties such as the Joneses.

The basis for the tort duty to use due care, owed by an insurance agent or broker to its client, is that the client "employed the services of [the agent], and placed confidence and trust in it as an experienced and knowledgeable insurance broker [or agent]." The agent "violated this trust and confi-

---

insured and to an injured third party claimant. Rather, such insurer may be liable only in contract.

dence, when it" failed to use due care. *Lowitt v. Pearsall Chemical, supra,* 242 Md. at 253, 219 A.2d at 72. This principal-agent relationship, involving confidence and trust, did not exist between Hyatt and the Joneses.

This Court in *Jacques v. First Nat'l Bank, supra,* 307 Md. at 534–535, 515 A.2d at 759–760, set forth some of the considerations in determining generally when tort duties should be recognized:

> "In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability." (Footnote omitted).

In the case at bar, the Joneses incurred "a risk of economic loss only" as a result of Hyatt's negligent breach of contract. The Joneses' personal injuries did not result from Hyatt's negligence but were caused by the negligence of K & D's employee. The only injury possibly incurred by the Joneses as a result of Hyatt's negligence is that their judgment against K & D may not be satisfied.[10] This is economic loss only.

Moreover, there was no "intimate nexus" or "direct relationship" between Hyatt and the Joneses. At the time of the contract between Hyatt and K & D, the Joneses were not even identified third-party beneficiaries of that contract. It was not until the motor vehicle accident that the Joneses fell into a class whose members were among the intended beneficiaries of the contract. *See Napier v. Bertram,* 191 Ariz. 238, 954

---

**10.** Even this injury is somewhat speculative, as the record does not show whether K & D could satisfy the judgment in the underlying tort case.

P.2d 1389 (1998), where the Supreme Court of Arizona held that an insurance agent may not be held liable in negligence to a taxicab passenger for failure to procure uninsured motorist coverage for the agent's client, a taxicab company required by state law to have such coverage on behalf of its passengers. The Arizona court noted that, for it to hold a professional liable for negligence, it traditionally required "a duty of care" founded upon the "relationship between the non-client and professional" that "exceeded mere general foreseeability." *Napier*, 191 Ariz. at 242–243, 954 P.2d at 1393–1394.[11]

Consequently, under the principles set forth in *Jacques v. First Nat'l Bank, supra,* and other cases, the defendants' breach of their contract with K & D violated no tort duty owed to the Joneses.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COST.*

---

**11.** Under certain circumstances a third-party beneficiary of a contract between principal and agent, who is identified when the contract is entered into, may bring a tort action against the agent who has made representations to the beneficiary or otherwise assumed a duty owed to the beneficiary. *Flaherty v. Weinberg,* 303 Md. 116, 135–137, 492 A.2d 618, 627–628 (1985) (agent allegedly made negligent representations directly to the plaintiff, who was the identified third-party beneficiary of the agency contract, and who was allegedly not in an adversarial position to the principal, and the agent intended that the plaintiff would act upon the representations). The opinion in *Flaherty v. Weinberg,* however, clearly leads to the conclusion that the Joneses would not be entitled to bring a direct tort action against Hyatt.