962 A.2d 432

**Robert MILLSTONE As Trustee of Montgomery Scrap Corporation Profit Sharing Plan**

v.

**ST. PAUL TRAVELERS.**

**No. 2702, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Dec. 24, 2008.

506

Sue Lawless (Neil S. Hyman, McMillan Metro, P.C., on the brief), Rockville, for appellant.

Joel P. Williams (Jacqueline G. Badders, Niles Barton & Wilmer LLP, on the brief), Baltimore, for appellee.

Panel: SALMON, MEREDITH, JOSEPH F. MURPHY, JR.,*, JJ.

MEREDITH, J.

In this appeal, we shall rule that the Circuit Court for Montgomery County erred in granting a motion for summary judgment in favor of the appellee, St. Paul Travelers ("Travelers"), on the basis of the statute of limitations in a case filed by the appellant, Robert Millstone As Trustee for the Montgomery Scrap Corporation Profit Sharing Plan ("the Plan"). The Plan filed suit against Travelers on January 23, 2006, alleging that Travelers had breached its obligation to pay a claim the Plan made by proof of loss submitted April 6, 2005, pursuant to a contract of insurance covering employee dishonesty. Because the Plan's cause of action for breach of the insurance contract accrued, at the earliest, after the proof of loss was submitted, and suit was filed within three years of that date, the claim was not barred by the statute of limitations. Accordingly, we shall reverse the judgment of the circuit court and remand the case for further proceedings.

## Factual And Procedural Background

The facts that led to the litigation in this case are largely undisputed. The Plan is an employee benefit program for employees of Montgomery Scrap Corporation. As a qualified profit sharing plan, the Plan is required by law to maintain insurance coverage, in an amount equal to 10% of the assets in the plan, to protect against losses due to employee dishonesty. For the period beginning October 1, 1998, and continuing thereafter, Travelers issued a policy to the Plan insuring against employee dishonesty.

One of the employees for Montgomery Scrap Corporation was able to misappropriate over $30,000 of the Plan's funds by

---

* Joseph F. Murphy, Jr., Judge of the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

presenting checks labeled as "loans" to the Plan trustee, although the employee was not entitled to receive such loans and had no intention of repaying the loans. The Plan became aware of the employee's scheme sometime in October of 2002. The employee was prosecuted, and she pled guilty to theft.

The Plan delayed reporting the loss to Travelers until March of 2005, and did not file a proof of loss regarding the employee's theft until April 6, 2005. In a joint settlement/pretrial statement, the parties stipulated that the employee's false representations made to obtain the funds "would constitute 'employee dishonesty' under the [Travelers] Policy if made by [the employee] with the manifest intent not to repay the loans." Although the parties exchanged correspondence subsequent to the submission of the proof of loss, no payment was made by Travelers to the Plan, and on January 23, 2006, the Plan filed suit against Travelers alleging breach of the insurance contract.

Travelers responded by denying liability generally and asserting affirmative defenses alleging, among other things, that the Plan's claims were barred by the applicable statutes of limitations and by the Plan's failure to comply with conditions precedent to coverage under the policy.

Travelers eventually filed a motion for summary judgment asserting two principal arguments. First, Travelers argued that the claim had not been timely submitted because the policy includes language that imposes a duty upon the insured who discovers a loss to "[n]otify us [, *i.e.* Travelers,] as soon as possible," and "[g]ive us a detailed, sworn proof of loss within 120 days." Travelers argued that the Plan failed to meet these policy terms and was, therefore, barred from pursuing the claim. The motion court rejected this argument as a basis for summary judgment, and Travelers has not contested that ruling in this appeal. There were, in any event, factual disputes regarding the reason for the Plan's delay in filing a claim. The Plan contended the delay was attributable to its inability until 2005 to confirm the existence of coverage. The

Plan further argued that Travelers had suffered no prejudice as a consequence of the delay.

The second argument advanced by Travelers in support of its motion for summary judgment was based upon a "Maryland Changes" endorsement to the policy that purported to limit the time for filing suit, and provided as follows:

**Legal Action Against Us:** You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance; and

a. Until 90 days after you have filed a proof of loss with us; and

a. Unless brought within 3 years from the date you discover the loss.

Travelers argued that it was undisputed that the Plan discovered the loss sometime in October 2002, and therefore, under the provision of the policy endorsement requiring any legal action to be brought "within 3 years from the date you discover the loss," the deadline for filing suit would have been October 2005. Depending on the exact date in October 2002 when the loss was discovered, the Plan's suit was filed three to four months (more precisely, 84 days to 114 days) beyond the expiration of three years after discovery of the loss.

In opposition to the motion for summary judgment, the Plan responded that Maryland law—specifically, Maryland Code (1995, 2003 Repl.Vol.), Insurance Article ("IA"), § 12–104—prohibits an insurer from imposing a time limit in a policy such as this that would reduce the time for filing suit to a shorter time than the amount of time the insured would otherwise have to file suit under the applicable statute of limitations. According to the Plan, for a civil action alleging breach of an insurance contract, the action accrues on the date of the insurer's breach, and the time limit for filing suit is three years from the date of the breach. *See* Maryland Code (1973, 2006 Repl.Vol.), Courts and Judicial Proceedings Article ("CJP"), § 5–101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision

of the Code provides a different period of time within which an action shall be commenced.").

Travelers countered that the endorsement providing that any action must be brought within three years after the discovery of the loss was not a limitations provision. According to Travelers, the provision was simply an agreement as to when an action against the insurer accrues, and because the provision permits an action against the insurer to be filed within three years thereafter, Travelers contends the policy provision does not run afoul of IA § 12–104, which provides:

**§ 12–104. Validity and effect of limitations periods.**

(a) A provision in an insurance contract or surety contract that sets a shorter time to bring an action under or on the insurance contract or surety contract than required by the law of the State when the insurance contract or surety contract is issued or delivered is against State public policy, illegal, and void.

(b) If an insurance contract or surety contract contains a provision that is illegal under this section:

(1) a State court may not give effect to the provision; and

(2) a defense to liability under the insurance contract or surety contract may not be based upon the shorter limitation period.

The motion court agreed with Travelers's position that, under the terms of the policy, the Plan's claim against the insurer for breach of contract accrued upon discovery of the loss. Because the Plan did not file suit within three years after that date, the motion court ruled: "[T]he statute of limitations applies ... and [ ] the suit is barred." For the reasons set forth below, we disagree.

### Legal Discussion

The Plan's claim that is the underlying basis for its suit against Travelers is for an ostensibly covered loss that occurred during a period there was a policy of insurance in effect. We say this without prejudice to any defenses Travel-

ers may raise other than the statute of limitations defense that was the sole issue addressed by the motion court in granting the summary judgment. We express no opinion as to other defenses to the Plan's claim.

But, for purposes of this appeal, there is no dispute regarding several basic facts. There is no dispute that Travelers provided insurance coverage to protect the Plan against losses due to employee dishonesty. There is no dispute that a dishonest employee misappropriated a substantial sum of the Plan's funds during a time period when the Travelers policy was in effect. There is no dispute that the Plan discovered the employee's dishonesty in October 2002. There is no dispute that the employee pled guilty to theft in October 2003. There is no dispute that the Plan submitted a sworn proof of loss to Travelers on April 6, 2005. There is no dispute that Travelers paid nothing to the Plan to compensate it for any losses caused by the employee's dishonesty. And there is no dispute that the Plan filed suit for breach of the insurance contract on January 23, 2006. The sole basis for granting Travelers's motion for summary judgment was the statute of limitations.

We note that the general statute of limitations for a breach of contract action is three years from the date the cause of action accrues, as set forth in CJP § 5–101. In *Lane v. Nationwide Mutual Insurance Co.*, 321 Md. 165, 582 A.2d 501 (1990), which was a case involving a claim by an insured against its insurer for uninsured motorist benefits, the Court of Appeals rejected the insurer's contention that limitations began to run as soon as the insured learned that the tortfeasers were uninsured. The Court held that the statute of limitations for breach of contract could not begin to run before the insured had made a claim against the insurer for the uninsured motorist benefits. The Court stated, *id.* at 173, 582 A.2d 501: "As long as the insured does not demand compensation under his own insurance policy, the uninsured motorist carrier is not called upon to pay under the contract, and, therefore, there can be no breach of contract causing the statute of limitations to begin running."

■ This is in accord with the general rule that a cause of action for breach of contract accrues upon the breach, as stated in 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:14 (4th ed.2004, updated through October 2008) (footnotes omitted):

> The general rule governing the commencement of the running of the statute of limitations is that the statutory period is computed from the time when the right of action that the plaintiff seeks to enforce first accrued; ordinarily, in an action based on a contract, accrual occurs as soon as there is a breach of contract, with some courts qualifying this by stating that accrual occurs when the promisee discovers or should have discovered the breach, and others stating that accrual occurs upon breach, whether or not the promisee is then aware of the breach.

*See Boyd v. Bowen,* 145 Md.App. 635, 669, 806 A.2d 314 (2002) ("In Maryland, a cause of action for breach of contract accrues when the contract is breached, and when 'the breach was or should have been discovered.'") (Quoting *Jones v. Hyatt Ins. Agency, Inc.,* 356 Md. 639, 648, 741 A.2d 1099 (1999)).

■ In the present case, Travelers agrees that the first demand made by the Plan was the proof of loss submitted April 6, 2005. Applying the normal rules that govern contract actions in Maryland, the statute of limitations for a breach of contract action against the insurer could not have begun to run prior to the time Travelers was called upon to perform its obligations under the contract, and that date, at the very earliest, was April 6, 2005. Consequently, a suit filed on January 23, 2006, would have been well within the three year statute of limitations that is generally applicable to contract actions.

Moreover, as the Plan stresses, IA § 12–104 states: "A provision in an insurance contract or surety contract that sets a shorter time to bring an action under or on the insurance contract or surety contract than required by the law of the State ... is against State public policy, illegal, and void." As we observed in *Notre Dame v. Morabito,* 132 Md.App. 158,

172, 752 A.2d 265 (2000), when the legislature enacted IA § 12–104, it "declared provisions in insurance and surety contracts that shortened periods of limitation to be against public policy and unlawful." Commenting on the previous version of the statute in *General Insurance Co. of America v. Interstate Service Co., Inc.,* 118 Md.App. 126, 138, 701 A.2d 1213 (1997), we said: "[T]he Maryland statute [Maryland Code (1957, 1994 Repl.Vol.) Art. 48A, § 377B] expressly states that contractual limitations provisions in insurance contracts are 'against State public policy, illegal and void. . . .' The statute further directs that 'no court in this State shall give any effect' to such provisions."

The Plan's position is that Travelers did not refuse to pay the claim until sometime in January of 2006, but that, in any event, the Plan should have at least three years following the date it submitted its proof of loss to file suit, and any provision in the insurance contract that purports to "set[ ] a shorter time to bring an action . . . on the insurance contract" is void and unenforceable.

With respect to the statute that precludes an insurance policy from setting a shorter time to bring an action than the insured would otherwise have to file suit on the contract, Travelers argues: (a) the general statute of limitations is three years; and (b) under its policy provision that requires any action against it to be brought within three years after discovery of a loss, the insured *is* given three years to file suit. Therefore, Travelers contends, there is no setting of a "shorter time to bring an action" because the insured still has three years. In its brief, Travelers asserts:

> [T]he policy's . . . endorsement [requiring an action to be brought within three years after discovery of a loss] does not alter the required three-year *time period* for filing suit, but establishes an agreed *accrual* date for the running of the three year period—namely, the insured's discovery of loss. This contractual agreement as to accrual is not contrary to Section 12–104(a)'s reference to the period of time, and is consistent with Maryland case law.

In support of its position, Travelers cites *Morabito, supra,* 132 Md.App. 158, 752 A.2d 265; *Harbor Court Associates v. Leo A. Daly Co.,* 179 F.3d 147 (4th Cir.1999); and *Hagerstown v. Hagerstown,* 368 Md. 351, 793 A.2d 579 (2002). Travelers recognizes that "*Morabito* does not involve an insurance or surety contract," that IA § 12–104 "was not at issue in *Morabito,* and the case does not address its applicability or construction." Nevertheless, Travelers points to *Morabito* as supporting its position, stating in its brief that this Court "held [in *Morabito* ] that parties are permitted to agree to an accrual date for a cause of action." Indeed, in *Morabito,* where the claim did not arise under an insurance contract, we concluded, as a matter of first impression, 132 Md.App. at 174, 752 A.2d 265:

> [P]arties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation.

Travelers notes that the *Morabito* opinion also relied upon Judge Luttig's opinion in *Harbor Court Associates,* in which the Court of Appeals for the Fourth Circuit upheld a contractual agreement as to accrual of a cause of action for breach of a construction contract. Like the *Morabito* case, *Harbor Court Associates* dealt with an express agreement regarding when an action for breach of contract would accrue in a construction contract. The court made no mention of IA § 120–104 in *Harbor Court Associates.*

After reviewing the explicit contractual agreements pertaining to accrual of actions that were held enforceable in *Morabito* and *Harbor Court Associates,* and upon comparing the language addressing accrual in those cases with the language in the Travelers policy, we find no support for Travelers's basic premise that the three year limitation language in its policy was merely a contractual agreement as to accrual. In *Morabito,* the parties' contractual agreement as to accrual

of causes of action read as follows, 132 Md.App. at 164, 752 A.2d 265:

> Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

The contractual agreement regarding accrual of causes of action in the *Harbor Court Associates* case, 179 F.3d at 148–49, was similarly explicit as to when an action would be deemed to have accrued:

> As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the relevant Date of Substantial Completion, not later than the date of issuance of the Final Certificate of Payment.

In contrast to the accrual agreements in those cases, the provision in the Travelers policy makes no mention of accrual of actions. Although the Travelers provision does purport to set a three year limitation period beginning with the date of discovery of a loss, it does not establish the date upon which an insured may *commence* an action for an alleged breach of contract on the part of the insurer. The provision purports to establish a final date for bringing legal action but does not establish the point at which the insured may first file suit for any alleged breach of contract.

Travelers points to dicta in *Hagerstown, supra,* 368 Md. at 354–55, 793 A.2d 579, as supporting its position that the three year limitation provision in the Travelers policy is actually an agreement that only alters the accrual of an action. In

*Hagerstown,* the circuit court held that a provision in a surety bond that required suit under the bond to be instituted within two years from the date final payment was due was unenforceable under IA § 12–104. Recounting the facts of the case, the Court of Appeals observed, 368 Md. at 356, 793 A.2d 579: "Although the [circuit] court found the two-year limitations period set forth in the bond unenforceable, it looked to that provision to determine the parties' intent as to when the accrual time commenced, which was 'the date on which final payment under the Contract falls due.'" Neither party in the *Hagerstown* case raised any issue regarding when an action under the bond accrued. *Id.* at 357, 793 A.2d 579. The Court observed: "The sole disagreement between the parties ... is when the final payment was 'due' under the Construction Contract, because that was the triggering event for the statute of limitations on the performance bond action." *Id.* at 363, 793 A.2d 579. The Court of Appeals did not suggest that the language in the bond purporting to shorten the time for filing suit also purported to alter the time when an action on the bond would normally accrue. Moreover, in *Hagerstown,* the date final payment was due served as a reasonable approximation of the end of time for performance by the parties to the construction contract, whereas the date that Travelers contends should serve as the accrual date for an action against the insurer for breach of performance—*i.e.,* discovery of a loss—occurs before any performance by the insurer is due.

Not only does the three year provision in the Travelers policy fail to state affirmatively that an insured may commence an action for breach immediately upon discovery of a loss, the provision specifically provides that the insured "may not bring any legal action against [Travelers] involving a loss ... [u]ntil 90 days after [the insured has] filed proof of loss with [Travelers]." Because no legal action of any sort can be filed against Travelers for at least 90 days after proof of loss, the insured's cause of action could not possibly have accrued until 90 days after discovery of the loss. At the end of that 90 day period, an insured would only have 2.75 years remaining within which to file suit if the three year limitation period is

calculated from the date of discovery of loss. Consequently, even if we were to treat the policy as altering the accrual date albeit without expressly mentioning accrual, the provision would nevertheless run afoul of IA § 12–104 by leaving the insured less than three years following the altered accrual date within which to institute legal action. Although we reject Travelers's contention that the three year limitation language merely altered the accrual date, even if that assertion were correct, the 90 day prohibition against filing suit would result in an impermissibly shortened period for the insured to bring a legal action.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**